UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KARI HART,

Plaintiff,

v. Case No. 6:25-cv-997-JRK

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

---

## OPINION AND ORDER[1]

## I. Status

Kari Hart ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of depression; migraines; back, neck, and hip injuries; anxiety; fibromyalgia; severe constipation; decreased appetite; and weight loss. Transcript of Administrative Proceedings (Doc. No. 8; "Tr." or "administrative transcript"), filed August 4, 2025, at 57, 67, 575. Plaintiff protectively filed an application for DIB on April 25, 2023, alleging a disability onset date of May 2,

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Order Regarding Consent to Magistrate Judge Jurisdiction in Social Security Appeals (Doc. No. 117), Case No. 3:21-mc-1-TJC (outlining procedures for consent and Defendant's generalized consent to Magistrate Judge jurisdiction in social security appeals cases); consent by Plaintiff indicated in docket language for Complaint (Doc. No. 1).

2022.[2] Tr. at 193-96. Later, the alleged disability onset date was amended to July 15, 2022, the month after Plaintiff's last month of earnings constituting substantial gainful activity. Tr. at 713-15. The application was denied initially, Tr. at 57-65, 66, 79-82, and upon reconsideration, Tr. at 67-76, 77, 96-98.

On November 12, 2024, an Administrative Law Judge ("ALJ") held a hearing,[3] during which the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 30-55. At the time of the hearing, Plaintiff was thirty-three years old and working "for a homecare company" as a chart auditor with a "fully flexible schedule." Tr. at 37. On March 10, 2025, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 10-23.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council with an attached brief authored by her lawyer. See Tr. at 4-5 (Appeals Council exhibit list and order), 187-89 (request for review and brief). On April 7, 2025, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On June 6, 2025, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing

---

[2] The DIB application summary indicates it was actually completed on May 1, 2023. See Tr. at 193. The protective filing date for the DIB application is listed elsewhere in the administrative transcript as April 25, 2023. See, e.g., Tr. at 57, 67.

[3] The hearing was held via telephone with Plaintiff's consent. See Tr. at 33, 36, 153, 178-79.

a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues the ALJ erred in: 1) determining Plaintiff's residual functional capacity ("RFC") after improperly discounting Plaintiff's complaints of fatigue and pain associated with fibromyalgia; 2) finding that a walker or other assistive device is not required for ambulation; and 3) failing to evaluate Plaintiff's digestive disorders at step two and in the RFC assessment. Plaintiff's Brief (Doc. No. 10; "Pl.'s Br."), filed August 27, 2025, at 4; see id. at 5, 12, 16. On September 26, 2025, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 12; "Def.'s Mem.") addressing Plaintiff's arguments.

After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for reconsideration of the effects of Plaintiff's fibromyalgia consistent with SSR 12-2p. On remand, this reconsideration may impact the Administration's consideration of the remaining issues on appeal. For this reason, the Court need not address the parties' arguments on those issues. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam)

(concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## II. The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 12-23. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

activity since July 15, 2022, the amended alleged onset date." Tr. at 12 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: disorders of the skeletal spine (cervicalgia and low back pain), bilateral hip pain, fibromyalgia, headache, rectal prolapse, anxiety and obsessive-compulsive disorders, and depressive, bipolar and related disorders." Tr. at 12 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 13 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

> [Plaintiff can] perform a wide range of light work as defined in 20 CFR [§] 404.1567(b) on a sustained basis. [Plaintiff] can occasionally climb with respect to ramps and stairs; must never climb with respect to ladders, ropes, and scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; should avoid concentrated exposure to extreme cold and extreme heat as well as humidity, loud noise, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards, such as dangerous machinery, unprotected heights, and similar circumstances. [Plaintiff] can understand, remember, and carry out simple instructions. [Plaintiff] can sustain concentration, attention, and pace sufficiently to carry out those simple instructions over the course of an eight-hour workday and at two-hour intervals. [Plaintiff] can work in occupations that require only occasional contact with coworkers and supervisors. [Plaintiff] can work in a low stress setting, which is specifically defined to mean no hourly quota or production requirement, only simple work-related decisions, only occasional changes in the work setting, and only superficial contact with the public, where

> superficial is defined to mean contact that is incidental and not an essential function of the job.

Tr. at 14 (emphasis omitted).

At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as "a nursing case manager" and a "medical nursing auditor." Tr. at 21 (some emphasis and citation omitted). The ALJ then proceeded to step five. After considering Plaintiff's age ("30 years old . . . on the amended alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the VE's testimony and found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," such as "mailroom clerk, non-postal," "price marker," and "cleaner." Tr. at 21-22 (some emphasis and citations omitted). The ALJ concluded Plaintiff "has not been under a disability . . . from July 15, 2022, through the date of th[e D]ecision." Tr. at 23 (emphasis and citation omitted).

## III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a

preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff argues the ALJ erred in assessing her RFC after discounting her subjective complaints of fatigue and pain related to her fibromyalgia. Pl.'s Br. at 4, 5-11. According to Plaintiff, the ALJ did not consider Plaintiff's fibromyalgia within the framework of the relevant Social Security Ruling ("SSR") and improperly relied on objective findings to reject her testimony regarding her pain, fatigue, and other symptoms. Id. at 7-10. Responding,

Defendant contends the ALJ properly evaluated Plaintiff's symptoms in determining her RFC. Def.'s Mem. at 4-10.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)); see also Malak v. Comm'r of Soc. Sec., 131 F.4th 1280, 1287 (11th Cir. 2025). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

The Regulations provide that an ALJ "will" consider the following factors related to symptoms such as pain:

> (i) [The claimant's] daily activities; (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (vi) Any measures [the claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms . . .; and (vii) Other factors concerning [the claimant's] functional

> limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)-(vii); see Raper v. Comm'r of Soc. Sec., 89 F.4th 1261, 1277 (11th Cir. 2024). The factors must be considered "in relation to other evidence in the record and whether the claimant's statements conflict with other evidence." Raper, 89 F.4th at 1277 (citation omitted); see 20 C.F.R. § 404.1529(c)(4). To reject the claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Malak, 131 F.4th at 1287; Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 2012 WL 3104869.[5] SSR 12-2p "provides guidance on how the [Administration] develops evidence that a person has a medically determinable impairment of fibromyalgia and how it evaluates fibromyalgia in disability claims." Sorter v. Soc. Sec. Admin., Comm'r, 773 F. App'x 1070, 1073 (11th Cir. 2019) (citing SSR 12-2p, 2012 WL 3104869).

There are two main ways set forth in SSR 12-2p for evaluating whether fibromyalgia is a medically determinable impairment. The first way requires a

---

[5] Social Security Rulings "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations that [the Administration has] adopted." 20 C.F.R. § 402.35(b)(1).

claimant to have "[a] history of widespread pain" that "may fluctuate in intensity and may not always be present," as well as "[a]t least 11 positive tender points on physical examination" with various requirements; and finally, "[e]vidence that other disorders that could cause the symptoms or signs were excluded." SSR 12-2p. The second way requires "[a] history of widespread pain"; "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." Id.

Once an ALJ determines that a claimant has the medically-determinable impairment of fibromyalgia, the ALJ proceeds with a symptom-evaluation process. Id. "If objective medical evidence does not substantiate the [claimant's] statements about the intensity, persistence, and functionally limiting effects of symptoms, [the Administration is to] consider all of the evidence in the case record, including the [claimant's] daily activities, medications or other treatments the [claimant] uses, or has used, to alleviate symptoms; the nature and frequency of the [claimant's] attempts to obtain medical treatment for symptoms; and statements by other people about the [claimant's] symptoms." Id.

Then, the fibromyalgia impairment is included in the five-step sequential evaluation process as with other impairments. Id. Importantly, when an ALJ is considering the RFC, SSR 12-2p directs that "for a person with [fibromyalgia,] we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'good days and bad days.'" Id.

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); see also Malak, 131 F.4th at 1285. It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1545(a)(5), 416.945(a)(1). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1268 (11th Cir. 2019)); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, the ALJ found Plaintiff's fibromyalgia to be a severe impairment at step two. Tr. at 12. Proceeding to a symptom analysis, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence found in the record." Tr. at 15-16.

The ALJ recognized Plaintiff's fibromyalgia diagnosis, among other issues, as well as a prescription for a "2-wheeled walker with a seat on February 2, 2024." Tr. at 16. The ALJ then discussed the lack of "diagnostic evidence of any significant pathology, let alone any that would have been expected to produced more than minimal functional limitation for a period of 12-consecutive months since the amended alleged onset date." Tr. at 16 (citations omitted).

Further, the ALJ wrote:

> More importantly, the record certainly does not show physical examinations revealing any ongoing point tenderness, let alone at 11 or more tender points as required per *The 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia* (SSR 12-2p), or ongoing objective clinical manifestations of degenerative disc disease, osteoarthritis, or any other significant physical pathology, let alone any that would have been expected to produce more than minimal functional limitation for a period of 12-consecutive months since the amended alleged onset date ("She is not in acute distress", "Normal range of motion", "Painless ROM of all 4

extremities", "Motor function is intact", "No gross weakness", "Sensory intact", etc.) (See Exs. 1F, 3F, 4F, 6F, 7F, 10F-12F, 14F, and 17F). Most notably, the record shows the [Plaintiff] routinely, if not consistently, demonstrated an unremarkable gait, including during the consultative physical examination conducted on November 15, 2023 ("Normal gait", "No neurological gait deficits with negative Romberg", etc.) (See Exs. 1F, p. 14; 4F, p. 53 and 101; 6F, p. 3 and 7; 7F, p. 161, 264, and 497; 10F, p. 136, 296, and 381; 11F, p. 141, 307, 396; and 17F, p. 40). Not to mention, the record shows the remainder of the consultative physical examination conducted on November 15, 2023 was unremarkable, including normal muscle strength throughout, as well ("Revealed a pleasant female, in no acute distress, alert and oriented x 3", "She was seen walking down the hallway without any difficulties and she did not require an assistive device for ambulation", "She was sitting comfortably during the exam and was able to get on and off the examining table without any problems", "Negative straight leg raise", "Normal sensory, motor, and deep tendon reflexes", "Muscle strength was 5/5 both upper and lower extremities", "Normal coordination and station", "Normal grip strength and fine manipulation", etc.) (Ex. 6F, p. 2-7).

But for the generalized complaints of pain and fatigue, the record otherwise does not appear to show [Plaintiff] complaining of any ongoing headaches, weakness, or other physical symptoms, let alone since the amended alleged onset date ("Negative for fatigue, fever and unexpected weight change", "No headache", "Negative for headaches", "Denies dizziness, denies any gait disturbance", "No back pain", "Negative for arthralgias and myalgias", "Pain assessment: 0", "The Veteran feels steady when walking or standing", "The Veteran does not have a fear of falling", "Veteran has no restrictions", etc.) (See Exs. 1F, 3F, 4F, 7F, 10F-12F, 14F, and 17F). Even though [Plaintiff] underwent acupuncture, a few physical therapy evaluations, and used some medications, namely a muscle relaxer

> (Flexeril) and an over-the-counter pain reliver (ibuprofen), the record does not appear to show [Plaintiff] receiving any other significant or ongoing medical treatment, let alone since the amended alleged onset date ("Patient is doing well overall, she did undergo a cystocele and rectocele repair in Denver in June 2021 … states this [ha]s helped significantly with her discomfort", "Since surgery the incontinence problems have significantly improved, and her problems with BM as well", "Urinary symptoms remain well-controlled after previous surgery", "Has not been treated with triptan since onset of migraines approximately 7 years ago", "Patient states she has a history of tension headaches and normally takes ibuprofen which resolves them", "Patient is managing pain with ibuprofen", "Reported chronic pain for many years and stated she also feels it's better as well", "She is requesting nonpharmacological options for managing her chronic pain", "Currently uses acupuncture, massage to treat pains with some success", etc.) (See Exs. 1F, 3F, 4F, 6F, 7F, 10F-12F, 14F, and 17F).

Tr. at 16-17.

The ALJ's analysis frustrates judicial review and does not adequately comply with SSR 12-2p and the relevant authority on subjective complaints. First, in analyzing the matters, the ALJ conflates Plaintiff's fibromyalgia with other impairments. In doing so, the ALJ relies on a lack of objective evidence to substantiate Plaintiff's claims. Although at times it can be understood that the reliance pertained to other impairments, at other times, it cannot. Second, the ALJ does not at all discuss the treatment modalities for fibromyalgia and its corresponding pain and fatigue often documented in the record; the ALJ elected instead to discuss the medications and methods Plaintiff tried for other

impairments. See Tr. at 17 (discussing acupuncture, physical therapy, Flexeril, and ibuprofen). In fact, the record reflects that Plaintiff was prescribed duloxetine for fibromyalgia, and later, trazodone, after multiple complaints of fatigue. See, e.g., Tr. at 872, 2393.

Third, the ALJ relies on a lack of documentation of tender points "as required by . . . SSR12-2p." Tr. at 16. This reliance is in error for multiple reasons: it is factually incorrect, see, e.g., Tr. at 2467, 2469 (multiple "TPs" documented); the presence of tender points or lack thereof is not part of the inquiry once fibromyalgia has been established as a medically determinable impairment (which the ALJ did by making the severe finding at step two); and tender points are not the only way in which to make the medically determinable finding in the first instance, see SSR 12-2p (recognizing a second way of "[a] history of widespread pain"; "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded").

In sum, judicial review is frustrated because the Court cannot be sure the ALJ considered the relevant evidence pertaining to Plaintiff's fibromyalgia and actually applied the directives of SSR 12-2p. Nor can the undersigned be sure

that the ALJ considered the fibromyalgia effects in assigning the RFC. Reversal with remand is required for the ALJ to reconsider the effects of Plaintiff's fibromyalgia consistent with the requirements of SSR 12-2p.

## V. Conclusion

In light of the foregoing, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A) Reconsider the effects of Plaintiff's fibromyalgia consistent with SSR 12-2p;

(B) If necessary, consider Plaintiff's other arguments on appeal; and

(C) Take such other action as may be necessary to resolve this claim properly.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 21, 2026

James R. Klindt
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record